**E. F. HAUSERMAN CO. v. WRIGHT METAL, Inc., et al.**

**No. 1011.**

District Court, W. D. New York.

May 8, 1934.

On Motion to Reopen and Reargue Nov. 13, 1934.

See, also, 1 F. Supp. 43.

Popp & Powers, of Buffalo, N. Y. (Fay, Oberlin & Fay, John F. Oberlin, and Joseph G. Fogg, all of Cleveland, Ohio, of counsel), for plaintiff.

George M. Blackmon, of Jamestown, N. Y. (Austin & Dix, Albert M. Austin, and Reuben T. Carlson, all of New York City, of counsel), for defendants.

KNIGHT, District Judge.

The suit is in equity for infringement of several patents including 44 claims. E. F. Hauserman, plaintiff, is an Ohio corporation with its place of business located at Cleveland, in that state. Wright Metal, Inc., defendant, is a New York corporation, with its principal place of business at Falconer, in that state. Defendant Samuel J. Lasser is an assignee for benefit of creditors of Wright Metal, Inc., and is in the active conduct of the business of that corporation. The counterclaim set up in defendants' answer has been withdrawn, and the only issue is the alleged infringement by defendant of these patents.

The defendants do not contest plaintiff's title to the patents in suit. Noninfringement and anticipation in the prior art are the defenses interposed. Generally speaking, these patents pertain to various features and parts of metal partitions to inclose space in building interiors. The construction of partitions to divide interior space follows as a natural sequence of improvements in building construction. Until comparatively recent years, interior partitions were usually built of wood. Changes in material and type of construction, economy, and convenience, and the needs of safety directed the ingenuity of men to a new type of interior partition. A metallic partition of the general type involved here was a natural evolvement from the metallic form of partition. The metallic partition of the sectional type has been in use approximately 25 years. The plaintiff corporation has engaged in the manufacture of removable steel partitions since 1920, while the defendant corporation, under the name of Hollow Metal Construction Company, was organized in 1928.

The trial of this case consumed substantially two weeks. Many physical and photographic exhibits have been received in evidence. Voluminous briefs of the respective attorneys have been submitted, and it may be safely asserted that no contention on the part of either party has been lacking in most careful presentation as to every detail. The case has been thoroughly and most ably tried. The niceties involved in the questions presented could best be solved by a mind specially trained in the study of patents and patent laws. This court has not such special qualifications. It has, however, given the issues long and careful consideration and to the best of its ability.

The patents and claims in question relate to the following particular parts of metallic partition construction: Vertical panel assembly, post and cornice construction and assembly, wicket, mop strip, shim, and plinth.

■ Certain rules of law point the paths of decision upon the claims and patents in question. The plaintiff has the burden of proof upon the issue of infringement. Hatmaker v. Dry Milk Co. (C. C. A.) 34 F.(2d) 609. Letters patent are prima facie evidence that the device was patentable. Palmer v. Corning, 156 U. S. 342, 15 S. Ct. 381, 39 L. Ed. 445. "This presumption is strengthened by the circumstance that the alleged anticipating patent was considered by the Patent Office in connection with the application for the patent in suit. And the presumption is weakened by the circumstances that closely similar prior references were not interposed or considered." Walker on Patents, vol. 1, § 535 (6th Ed.). Defendant must show prior use beyond a reasonable doubt. Cantrell v. Wallick, 117 U. S. 689, 6 S. Ct. 970, 29 L. Ed. 1017. In considering whether there is invention, everything known to the art through patents, publications, or use must be considered.. U. S. Hoffman Machinery Corporation v. Pantex Pressing Machine, Inc. (D. C.) 35 F.(2d) 523. Plaintiff must show the defendants' structure was made or sold subsequent to the issue of the patents in question. Mere showing in a catalog is not infringement. Van Kannell Revolving Door Co. v. Revolving Door & Fixture Co. (D. C.) 293 F. 261. Patentees are required to declare and define their invention so that the public may know its rights. American Bell Telephone Co. v. National Telephone Mfg. Co. (C. C.) 109 F. 1043. Patentee's claims cover only that which is both described and claimed no matter how broad the claim language may be. Baker Perkins Co. v. Thomas Roulston, Inc. (C. C. A.) 62 F.(2d) 509. Where the art is advanced step by step by series of inventions so that no one inventor can claim the complete whole, each is entitled only to the specific form which he produces which differs from those of his competitors. Jay v. Weinberg (D. C.) 250 F. 469. Progressive adaptation by the mechanic's skill in the art without the exercise of inventive genius is not invention. Ford Motor Co. v. Ohio Stamping & Engineering Co. (C. C. A.) 56 F.(2d) 807. Reissue patents can be valid only when they are granted for the same invention for which the original patent was granted. Whether they are for the same invention is to be determined by the specifications and drawings, or models. Section 64, title 35 USCA; Seymour v. Osborne, 11 Wall. 516, 20 L. Ed. 33; Topliff v. Topliff, 145 U. S. 156, 12 S. Ct. 825, 36 L. Ed. 658; Lorraine v. Townsend (C. C. A.) 8 F.(2d) 673; Walker on Patents (6 Ed.) vol. 1, p. 365.

A question has arisen in the mind of the court with regard to the proper order in which the various claims of the different patents should be presented in this opinion. It has been concluded to take up the consideration of the patents separately, together with the claims under each.

I. Reissue Patent No. 17,440, issued September 24, 1929. Original Filed October 22, 1920.

Claims 1 to 10, inclusive, shown in the original patent, issued February 28, 1928, were retained in hæc verba in the reissue presented. The claims involved in this determination were all obtained by the reissue.

Claims 11 and 12 purport to cover a plurality of panels, erectable separately, between support members, and interchangeable with one another. Claims 14, 15, 17, and 19 purport to cover panel units with cornice assembly.

■ Claims 11 and 12 were twice rejected by the Patent Office on the patent to Klein, No. 1,241,635. Originally claim 11 said nothing regarding the abutting of or means of engagement of the horizontal members or the interchangeability of the panels. The first amendment after rejection purports to take care of the matter of abutting and engagement of the horizontals. Instead of merely saying "means of engagement" as before, it says: "Means extending in engagement between such horizontals fitting and aligning," etc. On the second rejection on the Klein patent, by further amendment the claim was made to recite that the panels were "erectable separately." Thus the view of the Patent Office seems to be that this particular feature in the combination set forth made it patentable over Klein. Claim 12, as originally presented, recited that the general channel-shaped horizontals engaged the support members, and that the horizontals were aligned by means of "a removably assembled member extending from support member to support member," etc. This claim was rejected and a further limitation included reciting that the panels "were erectably separately one above another." In construing these claims, under these circumstances, the plaintiff must be held to a very clear and definite proof of infringe-

ment. I. T. S. Co. v. Essex Co., 272 U. S. 429, 47 S. Ct. 136, 71 L. Ed. 335.

In claim 11, this interchangeability appears to relate to the vertical relationship of the panels with one another between the same pair of posts, rather than the idea of interchangeability between different pairs of posts. This construction of the claim is borne out by the statement of the patentee's counsel appearing in the record of the Patent Office with reference to claim 17 of the application then pending, which became claim 11 of this reissue patent. The statement then made was: "Applicant's conception is to use a plurality of standard units removably assembled one above the other in any desired combination."

In the disclosure of the patent, the means of engagement between the horizontals to fit and align the horizontals of adjacent panels is a separate member. This appears in the drawing of the patent as receiving the abutting channels of abutting horizontals. The later construction does not show any separate member, but the horizontals of the panels contact each other directly. The defendants' construction does not make use of any separate part, and the alignment between abutting horizontals is by means of edgewise extensions of one horizontal overlapping the abutting horizontal along the outer face. These facts, broadly considered, correspond to the means specified in claim 11, and, if this was the only limitation upon such means for aligning the horizontals, there would seem to be a similarity in function between the two constructions. However, this claim states that the horizontals are generally channel shaped, and if the channel shape is to have a function, it must be in connection with the aligning means set forth in the claim. The result obtained is not sufficient to prove identity or equivalency. The flanges of one horizontal of defendants' construction, which overlap the abutting horizontal, are independent of the existence or nonexistence of the channel in the abutting faces of the panel. It therefore does not appear that the defendants' construction for aligning the abutting horizontals of the panels is the mechanical equivalent of the structure set forth in the claim.

Further, the record does not indicate that the defendants' construction employs more than two panels abutting one another between any two parallel posts. One of these panels is a relatively long panel having a relatively wide horizontal at its lower edge. If such a panel was placed at the top of the opening between two adjacent posts, and the smaller panel disposed between the same posts but below and abutting the larger panel, interchangeability of panels would be had, but it would show an unsightly construction and no material utility or commercial value. This claim should not be so construed as to cover such an impractical arrangement. It is my conclusion that claim 11 is not infringed by defendants' construction.

Claim 12 relates to plurality of panels. It is more specific than claim 11. It purports to cover a removably assembled member extending from support member to support member, lapping and fitting and aligning the horizontals of adjacent panels. There does not appear to be any corresponding part in defendants' construction. Plaintiff's contention that this removably assembled member is the cornice piece in both constructions is not warranted, since the cornice members do not perform the same function and combination that the removable member of plaintiff's construction performs. It does not seem that the cornice is the mechanical equivalent of the aforesaid member. The cornice members which plaintiff claims are the equivalent of the coupling member, as it appears to me, are not fitted between adjacent upright posts, but across said posts, and therefore do not function to unite abutting panels in the manner contemplated by the patentee as disclosed in the record in the Patent Office.

Claim 14 purports to cover a cornice member between the uprights. It recites that such member has on its lower face an abutment acting as a stop to engage the section member beneath. This construction is found in the Dahlstrom Metallic Door Company partition in Guardian building at Cleveland, Ohio, placed in 1916. Plaintiff claims that the cornice member of the Dahlstrom construction is not an upper connection for the uprights, but that the cornice member is connected to the panel sections. The uprights in the Dahlstrom installation extend into the channel of the lower face of the cornice member. The cornice member acts as an upper connection for the uprights. The claim does not specify any particular connection, and should be interpreted to include the panel section beneath the cornice member as a part of the means by which the cornice

member connects the uprights. This construction is also found in the Klein patent, No. 1,241,635, and similar reasoning applies. Claim 14, it is noted, refers to upturned and horizontal flanges. These seem to be details which have no function or utility in the particular combination. Dahlstrom and Klein appear, also, to have this flange feature. In the Klein patent the cornice member may properly be considered as including member 8, shown particularly in figure 2 of the Klein patent. Slight skill of the average mechanic familiar with this art would be sufficient to modify the Dahlstrom and Klein constructions, if there were any occasion to cite differences pointed out by the plaintiff. The basis for this claim appears to be found in the Hauserman-Lasser patent, and the description therein is very meager and incomplete. It is apparent the patentees did not consider the horizontal flanges of any importance as a part of the invention originally covered by the patent before reissue. So far as I can find, neither the description of the invention nor the claims of the original patent before reissue show any features of claim 14 of the reissue. If this claim 14 is to be distinguished from Dahlstrom and Klein by details which require the exercise of inventive faculties to create, the claim would apparently cover new matter. A reissue must be for the same invention. An original patent must show an intention to secure the invention claimed in the reissue, and the patentee is not entitled to claim in a reissue patent any feature of the device that was not described in the original patent as a part of the invention, although it might be incidentally shown or indicated in the drawings. Mere disclosure in a drawing is not sufficient indication of an intention to claim that disclosure. It is my conclusion that claim 14 does not involve any patentable difference over the Dahlstrom installation or Klein patent. If the claim is construed as different patentably from those constructions, then it would seem to be invalid, because it covers new matter not included in the original patent.

Claim 15 is different from claim 14 only in referring to inturned flanges instead of horizontal flanges. There does not seem to be any material difference in the two claims, and my conclusion as to claim 15 is the same as to claim 14.

Claim 17, in substance, covers a plan of connecting a plurality of uprights with a cornice member of generally channel shape with outstanding flanges and with a bridge connection joining such flanges. In the aforesaid Dahlstrom construction in the Guardian building at Cleveland, is found this kind of a cornice member and with like bridge connections. What has been said with reference to cornice member in claim 14 applies here. The cornice member in effect forms an upper connection for the uprights, and the panel sections may properly be considered as a part of the connecting means. A like statement may be made as regards the Klein patent, No. 1,241,635. It therefore seems to me that claim 17 does not show a patentable improvement over such Dahlstrom partition or over the Klein patent.

Claim 19 relates to a post of tubular construction, with clips securing flanges aligned to leave an opening between the flanges and a horizontal member of generally channel shape, with an abutment engaging section members forming an upper connection for the posts in the uprights. The limitation in the shape does not enter into the accomplishment of any unitary purpose or function. Any novelty appears in the construction of the uprights. That construction, also, is shown in the aforesaid Dahlstrom partition.

The reissue claim seems to show material departure from the disclosure in the original patent. A review of the record in the Patent Office shows that the purpose of patentee's claim was to have an opening in the face of the post to enable access. This purpose was not shown in connection with the disclosure of the original patent, and the drawings indicate that no such construction was contemplated. It seems, therefore, to be a departure from the original invention, and for this reason is invalid. Even if this were not the fact, the construction of these upright posts is so different from that of the Wright partition that the defendants' construction does not infringe it. Defendants' construction is not the same as, nor the mechanical equivalent of, the post disclosed by the patent. Plaintiff's witness Balch testified that the defendants do not make any posts similar to figure shown in the reissue patent; that the post of the claim does not correspond with the post of Plaintiff's Exhibit 3; and that the post of defendants' structure does not correspond with the post of this claim. I hold defendants' construction does not infringe claim 19.

**II.** Patent No. 1,856,995 Issued May 3, 1932. Divided From Original Application Filed September 7, 1926.

Claim 1 covers upright supporting elements or posts of generally channel form with spaced ties connecting flanges of the channels without obstructing access to the opening between the flanges and forming symmetrical hollow posts with uniform longitudinal recesses on all sides and a plurality of panel units in a vertical assembly between such posts. A face member is inferentially included, since the post as described is a hollow symmetrical post with longitudinal recesses. The claim should be construed with this in mind.

Defendants claim their construction does not use "a plurality of panel units in removable vertical assembly." This contention cannot be sustained. The Wright catalog (Exhibit 18, pages 8 and 9), clearly shows members corresponding to panel units removable and in vertical assembly between the uprights. Defendants admit this construction in their statement that: "A sash member * * * is used in certain instances to increase the height of the partition." The claim does not recite interchangeability nor method of removability. The Hale and Kilburn installation in the Parkway building in Philadelphia, Pa., is not an anticipation. The uprights do not compare in several respects with those called for in the patent claim. Assuming the uprights are of generally channel form, they have no spaced ties connecting opposed flanges. The parts indicated by defendant to be the equivalent of spaced ties, bridging the flanges, of themselves constitute the flanges and do not connect the flanges. The Mills partition in the Studebaker building has no "symmetrical hollow post having longitudinal recesses on all four sides." The Mills partition of the Tidewater Sales building type shows longitudinal recesses on two sides. While the claim does not recite that the panel units may co-operate with all of the channels in the posts, the specification points out this purpose in the construction. A function for each recess is therefore specified. The Mills installations therefore cannot be regarded as anticipations. The claim is infringed.

Claim 5 relates to the connection between abutting horizontals of abutting panel sections and recites that the horizontals of the panel sections are connected by intermediate generally channel-shaped horizontal members having means for alignment. The construction shown in defendants' catalogs issued prior to May, 1932, reads within this claim. There is no proof that defendants sold any construction of that type. In defendants' catalog issued in May, 1932, another type of construction, so far as it relates to this claim, is described. It is defendants' contention that this is the only type being sold or offered for sale by them. I do not see how it can be held that this construction reads within the claim. The channel-shaped horizontals of the panel sections of the plaintiff's construction are important, particularly with respect to the inturned flanges thereon, because plaintiff utilizes that construction, as shown in the bottom portion of figure 12 of this patent, in fitting adjacent superposed panels, and it utilizes the same horizontal members of the panels at opposite sides of the cornice member, thereby making a universally interchangeable construction. The filler block at the top of the defendants' construction does not have a horizontal member of generally channel shape with edges rebent inwardly to form inturned flanges, and therefore that construction does not correspond to the expressly stated limitations in this claim. If it be assumed that such expressly stated limitations are immaterial in this combination and that a horizontal member of any shape and construction is the equivalent of this expressly defined horizontal of the plaintiff's device, then the claim would appear to read directly upon the prior art such as the Klein patent, where panel sections abut grooves in the upper and lower faces of a cornice member. It is important, therefore, that these expressly recited limitations be interpreted as shown in the patent if this claim is to be patentable, and when so construed the claim does not cover the defendants' construction, as described in its catalog issued in May, 1932.

Claim 12, like claim 1, relates to cornice, post, and panel assembly. It describes the panel members as having generally channel-shaped horizontals, such panels being removably and interchangeably assembled, and a cornice member with a continuous and uninterrupted recess in its lower side extending over the tops of the uprights and engaging the panels. It also describes the horizontals of the panels as being adapted to interfit with adjoining panels or said cornice recess interchangeably. The defendants' construction as advertised and

sold since May, 1932, reads within this claim where an installation involving several panels is used below the cornice. Defendants' catalog shows panels below the cornice adapted to interfit with adjoining panels and the cornice recess interchangeably. Within the reasonable interpretation of this claim, defendants' structure has a recess in the lower side of the cornice continuing without interruption and extending over the tops of the uprights and engaging the panels. This claim, therefore, is infringed. The Hale and Kilburn construction cannot be regarded as an anticipation, because the horizontals of the panels were not adapted to interfit with adjoining panels; a rail having been provided as a means of fitting adjoining panels together. Nor do either of the Mills partitions introduced anticipate the patent. The installation in the Studebaker building does not show a cornice member having a recess in its lower side, and, furthermore, the horizontals of the panels are not adapted to interfit with adjoining panels. In the Tidewater Sales Corporation installation, as in the Hale and Kilburn Parkway building construction, the panels did not interfit with each other, but were fitted and aligned by means of a separate member.

Defendants claim that claims 1, 5, and 12 in this patent are for the same invention as claimed in patent No. 1,681,805 and patent No. 1,681,340. The question of the similarity of the subject-matter of these claims was considered by the Patent Office. Claim 1 (then 24) was first rejected on the ground of double patenting. An amendment thereafter was made, and the claim was allowed. The claim was first rejected, because it was directed to the general subject-matter disclosed in patent No. 1,681,805, and did not appear to read on any single figure of the drawing. It was accepted on the theory that the amendment brought out the relationship of the completed assemblage and made it distinctive over the construction per se claimed in the parent patent. Whether the claims are coextensive or not coextensive determines the identity or nonidentity of invention. "Claims are co-extensive which cover the same combination of the same number, of the same parts, with the same features; though the functions which are mentioned in the claims are not co-extensive * * * but two claims are not co-extensive which specify different combination of parts * * *, even where some of those parts

are in each of the combinations." Walker on Patents, § 225, and cases cited. The statement of the Patent Office relative to claim 1 (then 24) is also applicable to claims 5 and 12. While the question is a close one, I conclude that the objection of repatenting is not good.

III. Patent No. 1,842,094, Issued January 19, 1932. Division Original Application Filed August 20, 1928. Including Claims 1, 6, 8, 9, 10, and 11.

██ Claim 1 relates to connection between the cornice and the upright post. The essence of the claim consists in the idea of a hollow post abutting the web portion of the cornice and having a removable face member permitting access to the under face of the cornice, with panel member abutting the support and engaged in the recess in the under face of the cornice. Defendants' cornice member is sectional, but nevertheless the equivalent of a continuous cornice member in so far as the combination of this claim is concerned. Claim 1 is infringed by defendants' construction. In the Dahlstrom Guardian building construction is found a hollow post abutting against the underside of the cornice member, with face member removably attached to the hollow post. The panel member is mounted between the posts and engaged in the groove on the under side of the cornice. There is, however, no access for any practical purpose to the under side of the cornice. In the Mills construction, Tidewater Sales type, the removable face does not give access to the under face of the cornice member, because an angle clip attached to the post prevents. The Mills partition (Tidewater Sales type) is therefore not an anticipation of the claim. Defendants contend that claim 1 is anticipated by the Mills Presbyterian Hospital construction. With this I cannot agree. The Presbyterian Hospital construction does not show a cornice "having upstanding flange portions rebent inwardly to define a longitudinal opening and having a recess in its web portion." Neither the Hale and Kilburn (Deisley) type partition nor Interior Metal Manufacturing Company partition comes within the terms of this claim. Otte patent, No. 1,231,289, disclosed in the Interior Metal Manufacturing Company partition, cited as prior art, was cited before the Patent Office. It has no removable face member. Neither the prior art nor the prior patented art anticipates the claim.

Claim 6 covers the idea of a cornice member with longitudinal recess along the lower side, adapted to receive a panel member, and aligning the posts, such posts having removable faces to permit access to the interior and means passing through the recess removably securing the cornice to the posts and accessible through the interior thereof. While defendants' cornice is made up of sections, the recess along the underside of the cornice member in defendants' construction appears to align the posts and does receive the panel member, but the means which removably secures the cornice to the post does not pass through the recess so as to be accessible from the interior of the posts. The cornice in defendants' construction is disconnected from the posts without access to the interior of the post and solely from the upper open face of the cornice. Plaintiff's construction requires removing of the face member to disconnect the cornice from the post. It is not practical to release the cornice from the post in defendants' construction through the interior of the post. The claim therefore is not infringed by defendants' construction.

Claim 8 refers to connection between panel members and the cornice. In defendants' construction the upstanding flanges of the top horizontal of a panel member may be considered in effect the same as the sides of the hollow horizontal. The cornice member extends continuously over a series of such panels. Several sections of the cornice member are coupled together and are the equivalent of a continuous cornice member in this combination. In defendants' construction, also, the recess on the lower side of the cornice and the cornice member have the equivalent of continuous walls connecting the opposite sides of the recess, and the recess in the lower side of defendants' cornice member is uninterrupted in continuity transversely thereof. This claim appears to read clearly on defendants' construction, and it is infringed by that construction. Claim 8, however, is invalid over the Mills partition (Tidewater Sales type). The Mills partition (Tidewater Sales type) has a panel member with upstanding flanges. The cornice member extends continuously over a series of such panels and has an uninterrupted longitudinally extending recess on its lower side. In the Dahlstrom partition aforesaid, we find panels with top horizontals received in grooves in the lower face of the cornice member. The cornice member is not formed by a single plate of sheet metal, but it apparently is constructed of built-up sections in the manner similar to defendants' cornice member construction. The Hale and Kilburn partition, claimed to have been installed in the Parkway building, has a composite cornice member with a groove in its under face into which panels fit, and the horizontals of the panels have upstanding flanges that are received in the grooves of the cornice member. It seems to me, therefore, that claim 8 is invalid for lack of invention over these prior partition constructions.

Claim 9 is infringed and not anticipated for the reasons assigned as to claim 1.

Claim 10 covers an assembly of panels, a cornice and upright posts having removable faces. It recites means removably connecting the cornice to the posts, accessible by reason of removable face cover. Since the securing means in defendants' construction is not accessible by reason of a removable face cover, this claim is not infringed by defendants' construction. It likewise is invalid over the Mills partition, Presbyterian Hospital type, where the securing means are accessible by reason of the removable face cover.

Claim 11 of this patent covers a tongue and groove connection between the recessed web of the channel-shaped cornice member and a panel member, a series of such panels being aligned by the cornice. This claim is therefore infringed by the defendants' construction, but is invalid for lack of invention over the Mills partition (Tidewater Sales type) and over the Dahlstrom partition. The Mills partition (Tidewater Sales type) has a cornice member with a groove in its underside or web portion, which receives the top horizontal of a panel member. The Dahlstrom partition, as installed in the Guardian building, also has a generally channel-shaped cornice member with a groove in its under face, or web portion, which receives the top horizontal of a panel member. A similar construction is found in the Hale and Kilburn partition.

Defendants assert that each of the foregoing claims were previously described and claimed in patent No. 1,681,340. The file wrapper of this patent shows that the question of double patenting was raised before the Patent Office. The Patent Office first held that the subject-matter claimed therein had been covered by patent No. 1,681,340, and rejected the application. A supplemental amendment to the application was

made, and the patent issued. The Patent Office then stated that the subject-matter of the application in general was "the mechanical construction of the cornice and its assembly in relation to the balance of a partition"; while patent No. 1,681,340 was "directed to a co-acting means for securing panel members and cornice member simultaneously to a post member." In patent No. 1,681,340 we find a specific limitation to coacting securing means. This did not appear in patent No. 1,842,094. It does appear that the claims in No. 1,842,094 are a separable and independent invention. Miller v. Eagle Mfg. Co., 151 U. S. 197. I conclude that the claim of double patenting must be disallowed.

### IV. Patent No. 1,681,805. Filed September 7, 1926. Issued August 21, 1928.

 Claims 1 and 2 of this patent, if valid, in my opinion are infringed by defendants' construction. Claim 1 relates to support member having certain characteristics, but gives no details of the structure, so any member having such characteristics would seem to infringe the plaintiff's construction. However, by the same reasoning the Hauserman post installed in the American Chicle building, in Long Island City, N. Y., in 1921, the Mills installation in the Presbyterian Hospital in Philadelphia, in 1924, and also the art metal construction in the Reading Railroad building in Philadelphia, Pa., in 1921, anticipate the claim. I therefore hold claim 1 is anticipated by these prior uses.

Claim 2 relates to support member having channel section in which the web portion is one of the exposed faces of the support member and in which the channel is provided with abutments on the flange portion against which panel members are confined by means engageable against the face of the support. The substance of this claim is a tubular support member with removable face and with panel members lying against abutments on the flange members and confined by the cover plate. This claim is infringed by defendants' construction. Since the claim does not state that the support member is an upright post, a muntin is a support member within the meaning of the claim. This removable cover plate also confines glass or other panels against abutments on the channel-shaped part. Since the claim is not restricted to upright posts, it is anticipated by any muntin having the structure which meets the claim,

Mills support member No. 2, Tidewater Sales type construction aforesaid, reads within the claim, as do the Art Metal support member No. 1 (Reading Railway type) and Art Metal support member No. 2. Claim 2 is therefore anticipated.

Claim 3 recites that the channel-shaped cover plate overlaps the face of the support member and retains the panel members against the abutments. This claim is not infringed by defendants' construction, as in defendants' construction the face plate or channel-shaped means does not overlap the face of the support member. If construed as infringed, the claim would be anticipated by Mills support No. 2, Tidewater Sales type, and the art metal support No. 1 (Reading Railway type).

Claim 4 is infringed by defendants' construction but anticipated by the aforementioned constructions which anticipate claims 2 and 3. These show "a face member engaging said support member and having shoulders uniform with those on the support member," and this is the distinguishing feature of this claim.

Claim 5 states that the face member embraces marginal portions of the support member. In defendants' construction, flanges within the channel member embrace the ends of the support member. I think this construction comes within the reading of the claim, and therefore infringes. The claim does not recite how the face member is removable, and therefore it is anticipated by the Mills support member No. 2 (Tidewater Sales type) and Art Metal support members Nos. 1 and 2. All of these show a face member embracing marginal portions of the support member.

Claims 7, 8, and 9 cover a channel-shaped post having a shoulder along one of the sides, a door stop abutting the shoulder and a face member abutting the door stop. These three claims all read upon the defendants' construction and are clearly infringed thereby. Distinction between claim 7 and 8 is not of material consequence. Claim 9 differs from claim 8 principally in the inclusion of the securing means for the stop. The principal anticipation urged against these three claims is the Hale and Kilburn (Deisley construction type). However, that does not appear the equivalent, in that it does not show a post of the type described in these claims. I hold that these claims are infringed by the defendants' construction. In view of this holding, the question raised by plaintiff as to whether the

Hale and Kilburn construction was proved as being offered for sale need not be considered.

Claim 10 relates to upright support members or posts of generally channel form with a face member engaging the margins of such channel and means for connecting the free member to the channel member. This claim appears to read upon the defendants' construction. It is infringed. The subject-matter of this claim is found in the Hauserman Chicle post, in the Mills support member No. 2, Tidewater Sales type, and in the art metal support members No. 1 and No. 2. Plaintiff's construction is therefore anticipated by these prior constructions, and invalid.

Claims 13, 14, and 15 relate to the mop strip. Claim 13 calls for a combination of a panel member and a channel-shaped mop strip with means, consisting of engaging flanges on the one embracing the other, for adjustably securing the panel member and mop strip together. The only material difference between 13 and 14 is that the latter describes the mop strip as having "free flanges turned bevel-wise inwardly to frictionally and adjustably embrace the panel member." Claim 15 differs from claim 13 in that the mop strip is described as having side walls extending "bevel-wise inwardly and terminating in a compound flange."

Plaintiff's structure utilizes a "one piece construction." This feature is specifically stated in the specification. Defendants' construction utilizes two entirely separate mop strips. They are disconnected, except as it may be said they were connected through the interposed channel through its two flanges. Defendants therefore do not solve the problems of providing a mop strip in the same manner or by the same means. The use of mop strips at the floor line of partitions is old in partition construction. Plaintiff's special claim to patentable rights seems to be based on two particulars, that of the frictional engagement of strip and panel, and the so-called floating feature. The advantage of the former is prevention of an opening between parts. The advantages of the latter are claimed to be in respect to adjustability to meet floor irregularities. It does not appear from these claims whether adjustability refers to the moveability vertically of panel or strip. Either would accomplish the same result.

In the prior art we are referred to three constructions: Zahner construction in the Metropolitan building in Akron, Ohio, in 1916; the Dahlstrom mop moulding as shown in the Guardian building in Cleveland, Ohio, in 1916; and the Sanymetal Products Company moulding circularized beginning in 1924, and of which the record shows various constructions were put up before 1926. It appears that the Zahner and Sanymetal mop strips were held in place on the floor. The Dahlstrom moulding is like Dawson, 1,420,473, which was cited against plaintiff in the Patent Office, except that Dahlstrom discloses the feature of adjustability, but neither moulding "engaged" the panel member. Both were attached by clips to the side of the panel. In the Zahner Metal Sash & Door Company construction, the panel was adjustable, the mop strip was in two parts, and each part was held in place by the base of the jack screw used for leveling the panels. The Zahner patent drawing does not conform in style exactly to the Metropolitan building construction, but it is the same in material arrangement. This strip does not frictionally engage the panel. The panel is adjusted by means of a jack screw in the post. If the word "adjustably," as used in these claims, is applicable to either panel or mop strip, Zahner anticipates claim 13. It does not "frictionally" engage the panel as set forth in claim 14. Sanymetal Products Company moulding or mop strip meets every one of these claims assuming adjustable refers to panels alone. In form and appearance, when located, it is almost identical with defendants' mop strip. Claim 15 calls for channel walls terminating in a compound flange embracing the panel member. Defendants' construction does not read upon this claim, since only one channel wall has the compound flange. Furthermore the claim is anticipated by the Sanymetal Products Company construction, hereinbefore described.

The prior art discloses the basic idea of these claims, and the defendants' construction appears to be nearer to the prior art than to plaintiff's construction as described in the claims. I conclude that there is no infringement of these claims, and, further, that if the claims are construed broadly enough to read on defendants' structure, they are invalid for lack of invention over the prior art considered by the Patent Office and the prior uses shown.

Claim 16 is somewhat similar to claims 2 and 3, and is infringed by defendants' construction. For the reasons given with

reference to claims 2 and 3, it seems to me this claim is invalid as unpatentable because of the prior art.

Claim 17 is similar to claim 16, except that it includes the panel member and does not call for abutments on the flange portions. This is infringed by defendants' construction. The subject-matter of this claim, however, as regards all material details, is found in the Hauserman Chicle post, in the Mills support member No. 1 and Mills support member No. 2, and in the Art Metal support members Nos. 1 and 2. Claim 17 is therefore invalid because of anticipation by the prior uses.

Claim 18 relates to a channel-shaped support member with ties extending from flange to flange to give the post rigidity and to hold the flanges properly spaced at their free edges along the open face of the channel. This claim is clearly infringed by defendants' construction. But it is also clearly anticipated by the Hauserman Chicle post and Mills support member No. 1 (Presbyterian Hospital type) and Mills support member No. 2 (Tidewater Sales type).

V. Reissue 17,547, Issued December 21, 1929. Original Application for Patent Filed September 7, 1926.

All of the claims that are alleged to infringe relate to the tubular channel-like support member having a face member closing the open face of the channel and held in position by resiliency. Claims 1, 2, 3, and 4 read upon defendants' construction and are infringed by it.

Claim 1 describes "a hollow sheet metal support having a longitudinal opening and a face cover therefor adapted to be held by resiliency." Plaintiff's and defendants' support members are channel-shaped posts similarly constructed, except that the tie bars to strengthen the open face are differently applied, and the plaintiff's post has upstanding tongues or projections near the front edge of the side of the flange designed to hold the post cap in place. Both plaintiff's and defendants' post caps are held on by resiliency, plaintiff's slipping over the tongues aforementioned, the coacting flanges being pressed outward in order to pass the tongues and snapping inward behind them, while the defendants' cap has projections from each side flange which are pressed inward to pass the edges of inturned flanges at the open face of the post and snap outward behind them. Thus the plaintiff's cap engages around and outside the face of the post while the defendants' cap engages inside the face of the post. Both, however, are held by resiliency.

Citations by defendant of prior art are the Dahlstrom installation in the Guardian building, the Mills installations in the Presbyterian Hospital and Tidewater Sales building, the Hale and Kilburn, Deisley type, partition, Art Metal construction and Hauserman Chicle post construction in the American Chicle Company plant, Long Island City, N. Y. The Dahlstrom installation as shown resembles a plinth block. It is pertinent to illustrate the securing of a cover by resiliency. As to the Mills Presbyterian Hospital type face cover, the inturning of the flanges of the face cover to make the cap stay on by resiliency is questioned. If the inturning of the flanges holds the cap on, this Mills installation reads within the patent claim. The Mills Tidewater Sales type support is similar in construction, but it was not designed to be held by resiliency. The Hale and Kilburn (Deisley type) support member does not read on this claim, nor could the changes suggested by the defendant be made without material changes in the original construction. The same may be said about Art Metal support No. 1. Art Metal support No. 2 reads on the claim, if we call the muntin member a support member, and there is nothing in the claim which distinguishes a muntin member from a post. However, waiving any question as to the foregoing structures reading within the claim in question, Hauserman Chicle post, in my opinion, clearly is an anticipation.

While claim 2 recites the inturned flanges on the tubular support, those flanges have no function in the combination of elements and details recited in that claim, and are, therefore, surplusage and without function in the combination. The Hauserman Chicle post construction does not have such inturned flanges on a tubular post, but, since, in the combination recited, such inturned flanges are without function or utility, their omission in the Hauserman Chicle post construction does not bar this Hauserman Chicle post construction as an anticipation.

Claim 3 relates to the idea of forming a symmetrical tubular post of two sections, one of which is a removable cap plate by which the separability of the sections is not apparent upon casual observation. For this purpose recesses or grooves running the full

length of the post are placed in the sides of the complete post to receive and hold the panel sections. The provision of the channels or grooves in the face plate and in the web of the channel of the tubular post carry out this symmetrical idea, serve to conceal the removability and separateness of the cover plate, and make it possible to use any post as a corner post. While the Otte patent, No. 1,231,289, discloses such a symmetrical post, and it has been argued that to provide the similar grooves in the faces and covers of the other posts where a removable cover is used would not require invention, it is not clear that there is any suggestion in the prior art, that has been cited, of the desirability of making such a change. Claim 3 is therefore held to be valid and infringed by defendants' construction.

Claim 4 relates to a hollow metal support having longitudinal opening and a channel-shaped sheet metal face cover, with inturned edges and integral projections to retain such inturned edges. This idea seems to me unpatentable because of the lack of invention in this type of retaining the inturned edges.

Claim 5 differs from the other claims, 1–4, by including "stamped up" projections on the body member for retaining the inturned edges of the channel-shaped face cover. The plaintiff's construction employs blisters over which the inturned flanges of the channel-shaped cover snap. The defendant does not employ such blisters, but snaps the inturned flanges of the cover plate over inturned flanges of the channel-shaped post. This claim, being a specific claim and differing from the preceding claims, 1–4, largely by this single limitation, should be considered in connection with the disclosure in the specification and drawing. If the inturned flanges on the open face of the channel post are considered as the equivalent of the outwardly struck blisters, then the claim would read upon and be anticipated by the Art Metal support member No. 2. I do not consider that the inturned flanges of the post are in such a limited claim the equivalent of the blisters, and therefore claim 5 is not infringed by defendants' construction.

VI. Patent No. 1,773,704, Filed September 6, 1927. Issued August 19, 1930.
Plinth Block.

 Claims 2 and 8 are similar. Claim 2 provides for a plinth block of which "the upper part of the front face is bent over to form the upper horizontal portion of said plinth block and at the inward facing edge of said upward horizontal portions are formed to fit the contour of the vertical member against which said plinth block is positioned." Claim 8 differs only in providing for an upper horizontal member contoured as described in claim 2, and the two claims may be considered as one. If not a proper conclusion, then claim 8 is not in issue, as no structure having a separate upper horizontal member has been introduced.

Defendants' construction clearly is covered by the claim description as set forth in the patent application. Defendants claim the patent was anticipated by the prior art and consequently is not valid. In support of this contention defendant has submitted examples of construction which antedate by several years the plaintiff's patent. The Dahlstrom Company used a plinth in the Guardian building, Cleveland, aforesaid, which had its upper horizontal member formed from the front face, the inner edge of said member being contoured to fit the vertical member against which the plinth was positioned. The Zahner partition installed in the Metropolitan building, Akron, also comes squarely within the description of claims 6 and 8. There having been a designing, manufacture, and public use of this structure long prior to the application for a patent right thereon, the claims were improperly allowed and are invalid.

Claim 6 reads as follows: "In a metallic building structures the combination of a vertical adjustable plinth block and plinth clip of channel section substantially fitting the inner contour of said plinth block."

The Wright plinth is admittedly adjustable. The question is in regard to the means of securing the block to the vertical member of the partition. The claim calls for a clip of channel section. Plaintiff's exhibits disclose a clip of channel shape to be fastened, as by spot welding, to the face of the vertical member, and so designed that one of these clips must be positioned on each exposed face of the vertical member. The defendants' structure consists of a flat plate designed to rest on the floor squarely beneath the vertical member. It is held in place by a floor bolt and has upturned flanges on opposite sides, each flange designed to engage a strap positioned on the back of a plinth block. Plaintiff makes much of the channel shape of defendants'

clip, but it must be noted that the combination of two clips is necessary to give the channel shape, whereas each separate clip as made by plaintiff is channel shaped. In the patent description of the plinth clip, we find that "the dimensions of the channel section thereof" are "such as to provide * * * a slip fit in the space between the inside of the front face of the plinth block 1 and the flange 6," which flange is turned back at the rear vertical corner of the plinth block in order to provide means for holding the plinth block in place. Even assuming that the clip used by Wright is of channel shape, it is clear that the channel does not fulfill the function of plaintiff's channel. The channel of the Hauserman clip fits vertically along the side of the vertical member, while the channel of the Wright clip is positioned horizontally under the base of the vertical member. It should be noted that the Wright plinth has no inturned flanges along the vertical corners and could not be secured by a clip such as Hauserman uses.

The claim also calls for a plinth clip "substantially fitting the inner contour of the plinth block." It is evident that the clip as manufactured by plaintiff and submitted to the court does fulfill this requirement. It is as wide as the rear face of the plinth block. It is 1½ inches high; the plinth block being 2 inches high. It is only by a stretch of the imagination that the tongue or flange with which defendant secures the plinth to the vertical member could be held to meet this requirement. Defendants' plinth block measures approximately 3½ by 2 inches, while the clip is approximately 1½ by ⅞ inches. Plaintiff's clip substantially fits the inner contour of the block not only by reason of the similar size, but because it fits inside the plinth, and its entire outer area is in contact with the plinth. This is in direct contrast to the defendants' flange which does not directly contact the plinth but is turned inward and away from perpendicular line of the plinth in order to afford a pressure against the strap and has but a small outward bend at the top to facilitate its engagement with the strap when the plinth is being fitted to the completed structure. I do not believe that the defendants' clip can be classified as a mechanical equivalent of plaintiff's clip, nor do I believe that an infringement has been shown.

VII. Patent No. 1,675,593, Filed September 17, 1927. Issued July 3, 1928. Shim.

Claim 1 describes "A floor shim for metallic building units contoured to provide maximum support for the superposed structure, and to not interfere with concealing elements of the structure located thereabout." This is a broad claim, and there is no doubt that it covers the defendants' shim which is large enough to underlie the entire post but lies well within the plinth blocks.

Defendants cite as anticipations the art metal shim or plate used in the Federal Reserve building in New York City in 1924, and the Dahlstrom shim or plate as used in the Guardian building. The art metal shim or plate was practically the same shape as defendants' shim. It was used for leveling a partition across uneven floors, and was so designed as not to interfere with the concealing element. In the Federal Reserve partition structure there was no post, and the panel itself rested directly on the shim. In the claim, the superposed structure is not limited to a post, and hence this art metal shim anticipates the claim. There is considerable confusion in the testimony regarding use of the Dahlstrom so-called shim or plate. The doubt should be resolved in favor of the patent. It could meet the requirement of giving maximum support to the superposed structure since it fits the contour of the post. It does not interfere with the concealing elements. However, a leveling screw was provided to level the panels erected over uneven floors. The evidence is contradictory as to whether the part was used as a floor plate or a shim. The appearance of the Exhibit 00-1 is such as to indicate that one piece could be stacked above another. But there is substantial testimony to the effect that this was not done in the actual partition structure. It also appears that these so-called upward projecting tongues could be utilized to hold the leveling screw in place. Dahlstrom does not anticipate. I hold this claim is anticipated by the prior art.

Claim 2 restates the first claim and adds: "Said floor shim having an opening therethru for the insertion of a clamping screw and having an interlocking tongue projecting therefrom adapted to serve the double purpose of aligning said floor shim with the superposed structure and of aligning one floor shim with another when a plu-

rality of same are used in a pile." There is no doubt as to the opening in defendants' shim for the insertion of a clamping screw, nor is there any doubt that there are interlocking tongues thereon, which serve to align the shims where a plurality are used in a stack. A question arises as to whether on defendants' shim the same tongues interlock and serve to align the plurality of shims as between themselves and also to align said shims with the superposed structure. In defendants' structure there is a separate plate having upstanding tongues which align the superimposed structure, separate and apart from the tongues which align the shims. Thus the tongues in defendants' plate do not serve a double purpose. There is, therefore, no infringement.

VIII. Patent No. 1,725,350, Filed September 7, 1926. Issued August 20, 1929. Interchangeable Partition Insert (Wicket).

This patent relates to interchangeable sections, described as wickets, set in metal partitions and capable of being opened and closed. The patent recites the object of the invention as follows: "In wall or partition construction and especially in metal-frame, glass panel walls or partitions it is desirable in some situations to have available small window-like sections capable of being opened temporarily or permanently as may be required."

Claims 3 and 4 of this patent are involved in this suit. Claim 3 reads: "In construction of the character described, the combination of sectional framing, panel sections securable in said framing, muntin members engageable against the face of said panel sections, a swingable section adapted to interchangeably fit said framing, a stop for limiting the extent of movement, and a shelf beneath said swingable section." Defendants' construction reads within the claim insofar as it consists of the "combination of sectional framing, panel sections securable in said framing, muntin members engageable against the face of said panel sections, a swingable section * * * a stop for limiting the movement and shelf beneath said swingable section." Therefore, if defendants' claim of noninfringement is sustainable, it must be found that the swingable section is not "adapted to interchangeably fit said framing." In one sense, "interchangeably" may mean that the wicket may be substituted for the glass or steel panel filler, or vice versa, or it may mean that the wicket may be substituted for any one of the panel sections into which the panel is divided. Strength is given to the latter interpretation by two statements contained in the patent description. It is there stated, "Preferably, such unit is interchangeable in the general wall or partition system, that is, the framing comprising upright and horizontal members may be laid out to standardized dimensions to receive metallic or glass panel sections of convenient uniform size, and any one of these may be substituted by the openable units to be described"; also, "since the grooves may be readily opened up in effect, as seen, by removal of the facing member or muntin cap, it thus becomes possible to take out at any point described a panel which has already been placed and substitute the openable section, or such section may be built in place when the wall or partition is being initially set up." The plaintiff's structure carries out this idea, in that the openable unit may be placed in any division of the panel or, if installed in one division, may be removed and substituted for another. The defendants' openable unit is not built to allow this interchange, being constructed to fit only in the center panel division and being wider than the panel divisions which are on either side of it. It thus appears that defendants' structure does not infringe. Moreover, if the other possible interpretation of the use of the word "interchangeably" be adopted, there would still be no infringement. It does not appear that a glass panel could be placed in the division of defendants' panel occupied by the wicket, because the muntins are not designed in such a way that they would hold it in place. The plaintiff has failed to prove that its patent rights have been infringed by defendants' construction. It is therefore unnecessary to consider the validity of the patent over the prior art.

Claim 4 recites a panel frame adapted to receive glass, a muntin frame adapted to removably fit said panel frame, swingable frame adapted to fit said muntin frame, and a shelf beneath said swingable frame. This reads upon the defendants' construction. Defendants cite as anticipating this claim the wicket of Interior Manufacturing Company claimed to have been built in 1915 or 1916 and the Mills construction of the Tidewater Sales type. Proof is unsatisfactory as to any construction or use of this Interior wicket. Proof of the drawings or blueprints of the Interior construction standing alone is not enough to

show anticipation. At least defendants do not carry the burden cast upon them in that respect. Tidewater Sales type does not anticipate. If the single shelf is a patentable feature, this type does not anticipate as it has no single shelf beneath the wicket. It has no muntin frame comparable to the plaintiff's structure.

IX. Patent No. 1,681,340, Filed September 7, 1926. Issued August 21, 1928.

▆ Claim 1, the only claim involved, relates to panel and post connection. The claim includes the combination of a hollow post, panel member engageable with said post and take-up means insertable wholly from within such post for securing said panel member to said post. Defendants claim both that their construction has no take-up means to connect panel to post, and that the claim reads directly on the Mills partition (Presbyterian Hospital type) and Hauserman partition (Chicle Building type). The prior art constructions may be dismissed with the statement that the take-up means there shown are not "insertable wholly from within" the post. The Bohn patent, No. 1,571,230; and the Otte Patent, No. 1,231,289, which are comparable with the Mills and Chicle construction as to the securing means, were considered by the Patent Office on the application for plaintiff's patent. The Patent Office view is in harmony with the view here taken. Defendants concededly use take-up means insertable wholly from within the post to secure the door frame to the post. They do not use take-up means in any other connection. The question is whether the door frame comes within the meaning of "panel member" in the claim description. We find this description in the printed matter showing the Wright construction "Door frame is then set in opening and rigidly locked in place by concealed bolts located on inside of pilasters." The patent refers to the panel member as the part connected. It seems to me that the door frame is a panel member in the sense in which the term is used in the patent.

It is urged that the use of a metal screw and threaded hole is an old and well-known means for securing parts of a construction together, and the claim should not be dignified as showing invention. This conclusion is hardly warranted, since the method employed in the patent is quite unusual, in that the bolt connection may be made from within the hollow post and thus concealed from view, so as to not disfigure the construction. This claim is therefore infringed.

▆ It is claimed the plaintiff was guilty of laches in presenting the claims now at issue of patents No. 1,856,995, and No. 1,842,094.

Plaintiff's witness Balch testified to an installation including the features of claims 1 and 12 of patent No. 1,856,995 in a building of the Westinghouse Manufacturing Company at Sharon, Pa., in October, 1924. Claim 5 need not be discussed in this regard, as it has been hereinbefore held not infringed. Patent No. 1,856,995 was a division of application No. 134,110, filed September 7, 1926, which resulted in the granting of patent No. 1,681,805 on August 21, 1928.

All the features of claim 1 were described in the specification of September 7, 1926. The symmetrical arrangement of the posts, however, was not included in any claim. Spaced ties and a symmetrical arrangement of the posts were described but not claimed in the divisional application of August 20, 1928, but the first-mentioned feature was claimed by amendment on June 1, 1929, and the other by amendment of November 5, 1929. A divisional application for a part of the subject matter of a prior application relates back to the date of the original. American Laundry Machine Co. v. Prosperity Co. (C. C. A.) 295 F. 819; Webster Electric Co. v. Splitdorf Electrical Co., 264 U. S. 463, 44 S. Ct. 342, 68 L. Ed. 792. There was, therefore, no laches on the part of the plaintiff up to the time of the filing of the divisional application. An amendment dates back to the date of the application in cases where the amendment features were contained in the original specifications. Thus as to claim 1, it must be held that plaintiff was not guilty of laches.

All of the features of claim 12 are found in the description in the original application with the exception of the description of any recess in the cornice member. The accompanying drawing, however, clearly indicates a cornice member having a recess in its lower side connecting with the structure beneath. The original application describes a cornice "arranged on the supports or posts" and also describes the panels as being built up "section upon section, and section to cornice." If there is any obscurity in regard to the description of this under part of the cornice, the drawings may

be referred to to explain such obscurity. Walker on Patents, vol. 1, p. 311, and cases cited. The claim first describing the cornice member as having a recess in the lower side appears in the amendment of November 4, 1927. It was not included in the description of the divisional application of August 20, 1928, but it was claimed. It seems to me, in the light of the original description and drawing, no laches has been shown, because the subject-matter was always present from the date of the filing of the original application.

Defendants claim to have intervening rights with respect to the subject-matter asserted in claims 11, 12, 14, 15, 17, and 19 of patent reissue No. 17,440. In view of my holding with respect to such claims, as hereinbefore set forth, it is not necessary to pass on the question of intervening rights.

No less than twenty-five patents were cited in the Patent Office either against the applications or against the parent case. Defendants have included in the record no less than twelve patents claimed to anticipate the patents in suit and many types of construction of partitions have been presented by the defendants as prior art anticipations. The study of the patents involved has necessitated the study of each of these items. It has not been deemed necessary to give other details with regard to them than as set forth herein.

There are disclosed by the record many constructions and drawings of constructions in connection with the art of metallic partitions developed and produced long prior to any of the applications for the patents involved in this suit. In its general aspect this has an important bearing. This is said with full appreciation of the purpose of the patent law and the presumption which comes from the issue of patents. It must be conceded that the art was comparatively old. It appears beyond peradventure that numerous products of the art are at least similar in their general type of construction to the plaintiff's partitions. What was said in Page Steel & Wire Co. v. Smith Bros. Hardware Co. (C. C. A.) 64 F.(2d) 512, 513, that, "where an art is a specialized development of an older art, the offspring is entitled by right of descent to the previously disclosed useful characteristics of the ancestral estate," is pertinent here and accords with the view I take of the matters in issue in their general aspects.

A decree and proposed findings of fact and conclusions of law may be submitted in accordance with this opinion.

## On Motion to Reopen the Case and for a Reargument as to Certain Claims.

The defendants move to reopen the case as to certain claims in several patents and also for a reargument on certain claims. As to patent No. 1,842,094, claims 1 and 9; patent No. 1,681,805, claims 7, 8, and 9; patent No. 1,725,350, claim 4; and Patent No. 1,681,340, claim 1; the defendants move both for a reargument and reopening of the case. After a careful study of the affidavits submitted in support of the motion to reopen, I am of the opinion that the motion should be granted as to each of the aforesaid claims. Considering the difficulties which necessarily must arise in the investigation of the rights of the parties in a suit of this character involving many claims, it seems to the court that it is reasonable to believe that certain of the alleged prior art uses might not have been discovered by fair diligence at the time of the trial. The court is concerned only in making the right determination between the parties, and it seems to it that in justice to the defendants the opportunity to present this alleged newly discovered evidence should be afforded them.

Since, as stated, all these claims in these several patents are those upon which a rehearing has been asked, it follows, in view of the opinion just expressed, that a rehearing must be granted in so far as it applies to the effect of the newly discovered evidence. Upon the hearing on the reopening of the case, the court will determine what further examination, if any, should be permitted.

In view of the decision of the court upon the several claims upon which a reargument is asked, it is deemed advisable to go somewhat into detail in giving the reasons for the action thereon taken by the court.

## Reissue Patent No. 17,547, Claim 3.

Defendants contend that claim 3 of reissue patent No. 17,547 is an attempt unlawfully to extend the running of a patent monopoly already claimed in an earlier patent, No. 1,681,805. It does seem to the court that patent No. 1,681,805 discloses claims not directed to the idea of a symmetrical post nor a resilient coupling. It is true a

symmetrical post is disclosed. Claim 3 clearly claimed the shoulders on all faces of the post to make a symmetrical post, and the idea of a resilient coupling between the cover and the post channel. It seems to the court that claim 3 could not have been made in the earlier patent, No. 1,681,805, because the earlier patent did not disclose the resilient coupling. Claim 3 seems to be for a different species than that which is already claimed in claim 12 of patent No. 1,681,805, and there seems to be a proper line of division between them, and therefore no double patenting. It is not the similarity of disclosures of two patents to the same patentees which determines their validity, but rather it is the sameness of the inventions which are claimed.

█ If this view is correct, the validity of claim 3 must then stand or fall on its validity over the prior art. The patentee's own prior patent is not generally prior art to his later patent, unless there is double patenting on account of the claims, or the difference between the two are too trivial to require invention to produce. There are advantages in the symmetrical post, and the resiliently attached cover, and such changes are not trivial.

█ The question as to validity of claim 3 is whether or not the inventor was required to modify the symmetrical post of the prior art by making one face removable and attaching it by resilient means to the post channel. While prior art undoubtedly shows the removable cover attached to a post channel by resiliency, there was not also the symmetrical post used with such removable panel. The burden of proof that there was no invention was, of course, upon the defendants. Presumption of validity arises from the grant of the patent itself.

While I have not yet been shown reasons why my former decision should be changed, I realize that the question is close and not free from some doubt. The defendants have presented an extended memoranda on the question of this claim. The plaintiffs seem to have relied mainly upon the opinions of the court stating the circumstances under which motion for reargument should be denied. I realize the force of these opinions. Where the question, as here, seems a close one, the court feels it should have all the light that can be given, and it, therefore, grants the motion for a reargument as to this claim.

Patent No. 1,856,995, Claim 1.

█ The plurality of panel units in removable assembly between the uprights recited in claim 1 of patent No. 1,856,995 does not seem to me to add any patentability over the prior art, since the use of removable panels between the uprights is old in the art, and there is no new coaction between the panels and the posts. The claims of a later patent must distinguish patentability from an earlier patent even if division of that patent. Claim 1 of patent No. 1,856,995 differs from claims 2, 3, and 17 of the earlier patent mainly by including the ties connecting opposite flanges of the channel-shaped post. Claims 2, 3, and 17 do not recite these ties, but claim 11 of the earlier or parent patent, No. 1,681,805, does. The latter, however, recites the connecting means between the face member and the ties and thus definitely claims specific structures shown in figures 3 and 4 of the earlier patent, No. 1,681,805. The courts have said that while an applicant may elect to place his generic claims in either the parent or division applications, the generic claims must all be in one application, and the claims in the other application must be then read upon or be capable of being read upon a different embodiment of the patent. It seems to me that there is a question as to whether there is a proper line of division between the parent patent, No. 1,681,805, and the divisional patent No. 1,856,995, and whether claim 1 of divisional patent is an attempt to claim the same subject-matter already claimed in the parent patent and should have and could have been made in the parent patent. For these reasons, it seems to me that rehearing on claim 1 of the divisional patent, No. 1,856,995, should be granted.

Patent No. 1,856,995, Claim 12.

This claim relates to a different combination of elements than is recited in claims 1, 2, and 3 of patent No. 1,842,094, hence there appears to be no double patenting. The specifications of the two patents might be identical and not be double patenting if the claims of one patent are not directed to the same combinations as in the other patent. I see no reason to change the decision heretofore rendered with respect to claim 12, and the motion in that respect is denied.

The parties will arrange with the court for a date upon which the several matters aforesaid to be further considered can be heard.